UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ZINET EBE, | ) | CASE NO. ED CV 04-01520 (RZ) |
|         Plaintiff, | ) ) | |
|    vs. | ) ) | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) ) | |
|         Defendant. | ) ) | |

        This matter is here a second time, the Court having remanded the matter the first time, upon stipulation of the parties. [AR 489] The Court rejects Plaintiff's argument that the second time around the Administrative Law Judge did not comply with the Court's remand order. The remand order directed the Commissioner to comply with the stipulation of the parties for remand [AR 487-88] and the stipulation provided that, upon remand, the Commissioner would take evidence from a vocational expert. [AR 489] After the Commissioner vacated the prior decision [AR 486], the Administrative Law Judge was free to adopt a new finding of residual functional capacity, but he was not required to do so. What he was required to do was take vocational testimony, and he did so. [AR 505-518]

        In assessing the current arguments, the Court notes that the residual functional capacity which the Administrative Law Judge did find was that specified by a medical expert, Dr. Joselyn Bailey. [AR 463] Thus, not only does the description in the decision

[AR 473] mirror Dr. Bailey's statement, but also the Administrative Law Judge placed Dr. Bailey's statement before the vocational expert, and the vocational expert's testimony was based on that assumed residual functional capacity. [AR 506] Since the remand was undertaken to allow the obtaining of vocational testimony, it is especially important then to understand that the record thus was built on the determination that Dr. Bailey's residual functional capacity was that found by the Administrative Law Judge.

Dr. Bailey marked a form assessing Plaintiff's capacity as similar to that required for light work activity, *see* 20 C.F.R. § 416.967(b). Several of Plaintiff's treating physicians offered different opinions. Drs. Saul, Gipta and Chan all said that Plaintiff could not work. The Administrative Law Judge rejected those opinions. [AR 472-73]

Dr. Bailey never examined Plaintiff, even though Dr. Bailey filled out a form which begins with: "Important: Please complete the following items *based on your clinical evaluation of the claimant and on testing results . . . .*" [AR 463 (emphasis added)] Nor did Dr. Bailey attend either of the administrative hearings, and so she had no chance to observe Plaintiff. Dr. Bailey only reviewed Plaintiff's medical reports. [AR 461] The Ninth Circuit has held that

> An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she or he provides "specific and legitimate" reasons supported by substantial evidence in the record. . . . If the treating physician's opinion on the issue of disability is controverted, the ALJ must still provide "specific and legitimate" reasons in order to reject the treating physician's opinion.

*Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001) (citations and footnotes omitted.) The Circuit also has held that

> If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, "[t]reating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR [§ ] 404.1527." SSR 96-2p; see id. ("Adjudicators must remember that a finding that a treating source medical opinion is . . . inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").

*Holohan*, 246 F.3d at 1202.

The Administrative Law Judge rejected the treating physicians' opinions as to Plaintiff's capacity, in favor of the non-treating, non-examining physician's assessment, on the ground that the treating physicians' assessments were "inconsisten[t] with the record as a whole." [AR 472] Each of the reasons he gave for this view, however, was not legitimate.

First, he stated that although Dr. Cipta had said that Plaintiff was unable to work because of chronic left flank pain, that on examination Plaintiff was characterized as being in no acute distress. [AR 473] This is not inconsistent. "Acute" describes a condition with a short and relatively severe course. *See, e.g.,* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 23 (28th ed. 1994). Plaintiff's condition was chronic, and the fact that, at the time of examination, Plaintiff was not in an acute state of distress does not belie the assessment of Dr. Cipta.

Second, the Administrative Law Judge noted that Dr. Cipta attributed the claimant's pain to unknown etiology. [AR 473] This, however, does not properly reflect

Dr. Cipta's evaluation. Dr. Cipta worked in the pain management clinic at Loma Linda University; she was not a urologist. A urologist from Loma Linda had referred Plaintiff to Dr. Cipta for pain management. Dr. Cipta did not "attribute" the pain to an unknown etiology; she stated, as her diagnostic impression, that the etiology of the left flank pain was unknown, and she said that the "[p]atient will be referred to primary physician for etiology of pain." [AR 437] The fact that Dr. Cipta did not herself know the etiology of the pain, and deferred that part of the diagnosis to the primary physician, does not show any reason to doubt the assessments of Plaintiff's capacity. Dr. Cipta in fact later stated that, despite the efforts at pain management, that Plaintiff could not work. [AR 431]

Third, the Administrative Law Judge rejected the opinion of Dr. Chan, noting that Dr. Chan was in family practice and had referred Plaintiff to specialists. [AR 473] If by this the Administrative Law Judge meant that the specialist's assessment should be accorded greater weight, then the statement is in accord with the regulations. *See* 20 C.F.R. § 416.927(d)(5). However, the specialist *agreed* with Dr. Chan. (*Cf.* AR 319 and AR 179.) Even if he did not, under the regulations Dr. Chan still was a treating physician, and his opinion entitled to some weight. *Holohan, supra*, 246 F.3d at 1202.

Fourth, as for the specialist, urologist Stanley Saul, the Administrative Law Judge had several things to say. He said that Dr. Saul had found that Plaintiff had adequate function of her diseased left kidney [AR 473], which is not quite accurate. The reference, according to the Commissioner in this Court, is to Dr. Saul's statement of April 16, 2002. (Defendant's Memorandum of Points and Authorities in Support of Answer, 4:11-12.) In that statement, Dr. Saul said that he did not recommend removing the left kidney at that time, because there was "adequate renal function of the diseased left kidney at this time." [AR 226] That the kidney performed its function well enough so as not to be removed — and removal was only being considered at all because it was diseased — does not detract from the fact that there was an obstruction which caused significant pain, which Dr. Saul addressed in the earlier part of the same statement. The Administrative Law Judge also said that Dr. Saul did not consider Plaintiff a candidate for surgery. [AR 473] This,

however, is not correct. Dr. Saul in fact operated on Plaintiff twice in an effort to correct the problem with the left kidney. [AR 181] Dr. Saul concluded that a *third* surgery of the same type would not be productive, although he did occasionally entertain the possibility of surgery to remove the kidney entirely. [AR 183, 227]

Finally as to Dr. Saul, the Administrative Law Judge concluded that Dr. Saul was acting more in the role of an advocate rather than simply treating the claimant, because of his statements "directing" Plaintiff to appeal the Commissioner's decision, and his support of Plaintiff in her dispute with the Commissioner. [AR 473] The case cited by the Commissioner to this Court does not support the notion that Dr. Saul's assessment should be questioned on this basis. In *Saelee v. Chater*, 94 F.3d 520 (9th Cir. 1996), the Court of Appeals upheld a decision to distrust the opinion of the treating physician, where the opinion was obtained solely for the purposes of the administrative hearing, varied from his own treatment notes and "was worded ambiguously in an apparent attempt to assist Saelee in obtaining social security benefits." 94 F.3d at 522. Dr. Saul, however, did not manipulate his medical records in an effort to assist Plaintiff in her quest for benefits; he had treated her before she applied, and had operated on her twice. He did express his strong disagreement with the Commissioner's decision, and he did tell Plaintiff that he thought she should contest it, but that was an expression of confidence in his own judgment, and disagreement with the Commissioner's outcome, not an effort to slant his findings to produce the result he wanted.

The Administrative Law Judge also said that the objective clinical findings, in contrast to the treating physician's assessments, showed that Plaintiff's pain was controlled with exercise and at times anti-inflammatory, antibiotic and narcotic medications. [AR 472] This does not accurately characterize the statements from the doctor. Dr. Saul said that Plaintiff has "incapacitating" renal disease. He said that it was "controlled with exercise and at times anti-inflammatory medications and at times antibiotic medications and at times severe narcotic medication." [AR 226] It is clear from the context of the entire letter that Dr. Saul was describing the measures he had used to

address the medical condition, not that those measures had "controlled" the condition in such a way that Plaintiff could function normally. Thus, throughout the letter he continued to describe Plaintiff's condition as "incapacitating:" "[h]owever, she remains incapacitated to lift any heavy object or participate in any day-to-day normal minor work activity." [*Id.*] While it is true that a condition which is *under* control is not disabling, the clear import of Dr. Saul's analysis is that Plaintiff's condition was not under control; else he would not have described it as incapacitating.

The record does contain some conflicting opinions, but those who were closest to Plaintiff, having treated her, examined her, operated on her and reviewed various images of her, all concluded that she was not capable of working. The real disagreement centered on the etiology of her pain, with Dr. Saul apparently believing that it was renal in nature, even to the point of considering removal of the kidney [AR 227, 230-31], and Dr. Santiago, a urologist at Loma Linda University who provided a second opinion, doubting that the pain was renal in nature, suggesting that it might be musculoskeletal or nerve-related, possibly secondary to the surgeries, and advising against removal of the kidney. [AR 440-41, 438][1] But whatever the precise etiology, none of the treating physicians doubted the existence or incapacitating nature of the pain.

The Commissioner argues that there was substantial evidence to support the decision, because the opinion of the medical expert Joselyn Bailey was backed by other evidence, specifically the opinions of two consultants, Drs. Robinson and Singh. Dr. Robinson, whose letterhead references internal medicine and orthopedics, noted Plaintiff's complaint of pain in the kidney area of the back and left side of her abdomen, but referenced no tests, records or particular examination with respect to Plaintiff's kidneys. [AR 172-75] Dr. Singh, who stated that he was conducting an internal medicine

---

[1] Dr. Phillips, another doctor working with Dr. Cipta in the pain management clinic at Loma Linda University [AR 437], apparently also thought that the pain was not renal in nature. [AR 235]

consultation [AR 450] also specifically stated that his conclusions "relate to an internal medicine assessment of alleged disability, and should not be misconstrued as a complete physical examination for general medical purposes." [AR 455]  Although he said that he reviewed all medical records that were submitted [AR 450], he did not say what those records were, and his report contains no assessment of anything concerning Plaintiff's kidneys, other than to note Plaintiff's complaint and his conclusion that he thought the prior surgeries were due to obstruction.  [AR 455]

Moreover, Dr. Bailey did not agree with the functional capacities assessment of either consultant.  Dr. Robinson said that Plaintiff could sit for eight hours out of an eight hour day, stand for seven hours out of an eight hour day, and walk for six hours out of an eight hour day with appropriate rest periods. [AR 175] Dr. Singh stated that Plaintiff could stand and/or walk for about six hours in an eight-hour day, with normal breaks, and had no restrictions on her ability to sit during an eight-hour day. [AR 455]  Dr. Bailey accepted neither of these assessments.  Instead, she stated that Plaintiff could sit only for a total of six hours in an eight-hour day, and stand or walk for only four hours in an eight-hour workday. [AR 463]  Since Dr. Bailey did not herself examine Plaintiff, she had no personal basis for making an assessment, and since she did not adopt the assessment of the consultants, it cannot be said that her assessment of Plaintiff's capacity drew from their examinations.  Thus, not only did the Administrative Law Judge not furnish the legitimate reasons for rejecting the treating physicians' opinions, but also the evidence upon which he did rely was not sufficient to establish the Plaintiff's residual functional capacity.

As noted earlier, Dr. Bailey's assessment formed the basis for the vocational expert's testimony that there were sufficient numbers of jobs suitable for Plaintiff.  But "[i]f the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value." *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001), and therefore the conclusion that there were sufficient numbers of jobs which Plaintiff could perform cannot be sustained.  Under the circumstances, the Administrative Law Judge should have accepted the opinion of the treating physician.  The vocational

expert also testified, however, that if the limitations imposed by treating physician Dr. Saul applied, that there would be no work which Plaintiff could perform. [AR 516] Accordingly, the record need not be developed further. *Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004).

        In accordance with this Memorandum Opinion, the decision of the Commissioner is reversed, and the matter is remanded for payment of benefits.

        IT IS SO ORDERED.

        DATED:  September   2   , 2005

                            /s/
                        RALPH ZAREFSKY
               UNITED STATES MAGISTRATE JUDGE